Hillman, J.
The plaintiffs (Ericksons) seek monetary damages from the defendant (Hart) due to the alleged failure of the defendant to convey real estate to them. The plaintiffs allege that this failure to convey was in breach of a contract entered into between the parties or in the alternative that they are entitled to recovery under a theory of promissory estoppel. The defendant denies that any contract was entered into or that she made a promise to the plaintiffs reasonably expected to induce action by the plaintiffs to their detriment.
Early in 1994, the Ericksons began looking for vacant land in the town of West Boylston. They were looking for this land to enable their children to build homes near each other. Through research of the town’s assessor’s maps they located what appeared to be contiguous vacant parcels on Raymond Huntington Highway. One parcel, owned by a party named Sansoucy had frontage on the Highway. The other parcel, owned by Mrs. Hart, was landlocked back land.
The Ericksons’ plan was to acquire title to both parcels and provide each of their children with a lot suitable for building a home.
Mrs. Erickson contacted the Mrs. Hart who resides in Florida to determine if her property was available. It was, and Mrs. Hart agreed to sell the property to the Ericksons for $11,000.00. On November 26th of 1994 the plaintiffs sent Mrs. Hart a note identifying the parcel by reference to the assessor’s map, the price to be paid, a deposit check in the amount of $500.00 and the following: “Looking forward to a very busy 1995 with getting the land surveyed, perked and all the paperwork necessary, which hopefully Mark Gates of Land Planning Engineering and Survey, can begin doing right away. Then we can go forward with house building.”
On December 1, 1994 Mrs. Hart wrote a note to the Ericksons acknowledging receipt of the deposit and indicating that “. . .1 guess all things are ‘go’ ” and indicating that she had forwarded tax bills and the deposit to her attorney who “. . . would prepare a proper contract.” Several problems with the transaction became immediately apparent to the Ericksons. The first problem was that the title to the Sansoucy property was defective. The second problem was that the Hart parcel was the remainder of a much larger parcel from which other conveyances had been made. The Ericksons, upon advice of counsel, determined that they needed to know that the Hart parcel was in fact contiguous with Sansoucy and that it contained roughly the 11 acres shown on the assessor’s map.
From January of 1995 until May of 1995 the Erick-sons, through their attorney, worked to clear the title to the former Sansoucy parcel and to complete a survey of the Hart property. From the date of the oral agreement between Mrs. Hart and the Ericksons to convey the property Mrs. Erickson made a conscious effort to keep Mrs. Hart informed of the problems that they were experiencing with both parcels and with the progress that they were making in resolving those problems. In March of that year she asked for and received Mrs. Hart’s permission to conduct percolation tests on the parcel. In June of that year Mrs. Erickson asked Mrs. Hart’s permission to begin drilling a well on the parcel.
During this January to June of 1995 time frame the Metropolitan District Commission (M.D.C.) became aware of the Ericksons’ interest in developing these parcels. The M.D.C. had determined that these parcels were within the watershed of the public water supply and that they should acquire them to prevent then-development. Since the Sansoucy parcel had already been acquired by the Erickson’s son Edwin, the M.D.C. determined that they should acquire the Hart parcel. In furtherance of this goal they began their assessment of the parcel which included contact with Mrs. Hart to arrange for a site visit and other preliminary matters. Mrs. Erickson became aware of the MDC’s interest through her contacts with the agency in attempting to learn if the parcel had any restrictions against development.[3] She was not aware of the fact that the MDC had targeted the parcel and had, in fact, made an offer to Mrs. Hart to purchase the property for $42,000.00.
The parties had agreed to a closing date of June 30, 1995 when Mrs. Hart returned from a vacation in Hawaii. Mrs. Hart sent the Ericksons a post card from Hawaii indicating that she would be in touch with the Ericksons upon her return. When Mrs. Hart returned from Hawaii she presumably learned of the MDC plans to take the land and pay her $42,000.00 for the taking. She refused to convey to the Ericksons and accepted the MDC’s pro tanto offer.
The plaintiffs first argue that the parties, through the exchange of checks and writings, entered into a valid contract. The defendant says that while she did agree to sell the property, she intended that that agreement be memorialized by a “a proper contract.” *614 This condition, she argues, provides her with the defense of the statute of frauds which provides in pertinent part that:
No action shall be brought: . . .
Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them; . . . Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.
G.L.c. 259, s.l.
The plaintiff also argues that if the court finds that a written contract was not entered into that the doctrine of promissory estoppel prevents the defendant from relying on the statute of frauds.
The policy of the Statute of Frauds is that the essentials of an oral contract for the sale of land must be stated with reasonable certainty in a written memorandum. Michelson v. Sherman, 39 N.E.2d 633 (1942). “The memorandum must be accurate and it must contain all the provisions of the oral contract with which the plaintiff is seeking to charge the defendant.” A.B.C. Auto Parts, Inc. v. Moran, 359 Mass. 327 (1971).
Ordinarily, written language which contemplates the execution of a final written agreement justifies a strong inference that significant items of the transaction are still open and, hence, that the parties do not intend to be bound. Rosenfield v. United States Trust Co., 290 Mass. 210 at 216 (1935). However, if the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract. Goren v. Royal Investments Incorporated, 25 Mass.App.Ct. 137 (1987).
This was not a particularly complex transaction. The plaintiffs wanted to buy, and the defendant wanted to sell raw land. The problems that arose during the pendency of the sale were problems for the plaintiffs not the defendants. They included the not insignificant title issues of how much land the defendant actually owned and whether this land abutted other property that the Ericksons’ son owned. However, the essential terms of the transaction were agreed to in the initial correspondences between the parties and were never in dispute. They included the identification of the parcel to be conveyed, the terms of the sale, and the tendering and receipt of a deposit in conformation of those terms. The purchase and sales agreements that were exchanged by the respective counsel for the parties presented no language that was not otherwise honored by the plaintiffs in preparing to take title.
Accordingly this court is of the opinion that a written contract was entered into between the parties and that the defendant breached that contract by failing to convey to the plaintiffs on June 30, 1995. The plaintiffs are entitled to be put into as good a position as if the defendant had performed her obligations under the contract. Fernandes. v. Union Bookbinding Co., 400 Mass. 27 (1987). The plaintiff is entitled to the amount of money that the M.D.C. paid to the defendant ($42,000.00) minus the amount of money that the plaintiffs agreed to pay to the defendant for the property ($10,753.61).

ORDER

Judgment shall enter for the plaintiffs in the amount of $31,246.39 together with interest and costs thereon.
The plaintiffs’ requests for findings of fact and rulings of law are deemed waived.
The defendant’s suggested findings of fact numbered 4, 5, 9 and 16 are DENIED; the rest are ALLOWED.
The defendant’s suggested rulings of law are all ALLOWED.

 Mrs. Erickson was specifically concerned whether the Hart property was within the geographical protections of that portion of the Wetlands Protection Act (also known as the Cohen Bill).